UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ELEARNING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EXPITRANS, INC. & SCOTT VICKERS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [63] DEFENDANTS EXPITRANS, INC. AND SCOTT VICKERS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00464-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants Expitrans, LLC ("Expitrans") and Scott Vickers' (collectively, "Defendants") Motion for Summary Judgment.[1] Defendants move for judgment on the claim of unjust enrichment against it by Plaintiff eLearning, LLC ("eLearning") on the bases that: (1) the claim is barred by the applicable statute of limitations, (2) eLearning has no evidence to meet an essential element of the claim, (3) a contractual agreement precludes the claim, and (4) a forum selection clause requires dismissal of the claim.[2] For the reasons stated below, the court grants Defendants' motion on the statute of limitations basis.

## BACKGROUND[3]

Plaintiff eLearning is an e-commerce consulting business that is run by its single member, Kenneth Sonnenberg.[4] Expitrans is a merchant account and payment solutions provider

[1] Defendants' Mot. for Summ. J. ("MSJ"), ECF No. 63, filed April 15, 2026.
[2] *Id.* at 2–3.
[3] Defendants do not dispute the recited facts "solely for purposes of [its] Motion." MSJ 3 n.1
[4] MSJ 4 ¶ 4; Opp'n to Defendants Mot. for Summ. J. ("Opp'n") 2 ¶ 4, ECF No. 65, filed May 13, 2026; Am. Compl. ¶ 4, ECF No. 17, filed August 25, 2023.

that is owned and operated by Mr. Vickers.[5] Previously, Mr. Vickers was a principal of a company named ePay Machine ("ePay"), which also operated as a merchant account and payment solutions provider.[6] eLearning had, at one time, used ePay as its merchant account provider, and in conjunction with that arrangement, eLearning maintained a merchant account at a bank in the Republic of Mauritius ("Bank").[7] The Bank held eLearning's merchant account reserves ("reserve funds") that are the subject of this lawsuit.[8] The arrangement between eLearning and ePay required the release of these reserve funds "after 180 days absent valid chargebacks or liabilities."[9] eLearning processed its sales through the Bank merchant account from 2015 until it stopped in 2017—the last year eLearning had a chargeback to that account.[10]

In 2018, Mr. Sonnenberg began attempts to get the reserve funds released to eLearning.[11] On July 12, 2018, Mr. Sonnenberg sent an email titled "Reserves" and described his "need to get those reserves released . . . I've had no activity in those accounts for years."[12] Months later, on December 6, 2018, Mr. Sonnenberg emailed Mr. Vickers at his ePay email address requesting to "touch base regarding the reserve[] [funds] for [the] merchant account that I have with [ePay]

---

[5] MSJ 4 ¶ 2; Opp'n 2 ¶ 2; Am. Compl. ¶¶ 1, 5, 12.
[6] MSJ 4 ¶ 3; Opp'n 2 ¶ 3; Am. Compl. ¶¶ 1, 11.
[7] MSJ 4–5 ¶¶ 5, 7; Opp'n 2–3 ¶¶ 5, 7.
[8] MSJ 4 ¶¶ 5–6; Opp'n 2 ¶¶ 5–6.
[9] MSJ 4–5 ¶ 7; Opp'n 3 ¶ 7. To support this fact, Defendants cite to a proposed second amended complaint that is inoperative because eLearning's motion to amend its complaint was denied. *See* Mot. for Leave to File Second Am. Compl., ECF No. 56, filed January 28, 2026; Mem. Decision & Order, ECF No. 64, filed May 8, 2026. Defendants contend that, although not an operative pleading, the proposed amended complaint consists of "verified statements of a party opponent and are appropriate for consideration on summary judgment." MSJ 5 ¶ 7 n.2 (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 173 & n.4 (3d Cir. 2013)). But because eLearning does not dispute its use and admits this fact in its opposition, it is unnecessary to decide Defendants' legal argument.
[10] MSJ 6 ¶¶ 15–16; Opp'n 4 ¶¶ 15–16; ePay Weekly Settlement Statements ("Ex. 2"), ECF No. 63-1 at 38–46, filed Apr. 15, 2026.
[11] MSJ 6 ¶ 17; Opp'n 5 ¶ 17.
[12] MSJ 6 ¶ 17; Opp'n 5 ¶ 17; July 12, 2018, Email ("Ex. 3"), ECF No. 63-1 at 47–48, filed April 15, 2026.

and [the Bank]."[13] In that email, Mr. Sonnenberg wrote that the reserve funds "were set up as a 6-month rolling reserve so after 6 months they would be released but I haven't processed on that MID in a few years and I've still not had much released. I'd like to get the remaining amount released."[14] A few days later, Mr. Sonnenberg again emailed, among others, Mr. Vickers "to request the [reserve funds] to be released" for the Bank merchant account because he had not "processed on this account in about 2 years."[15] Mr. Vickers responded and confirmed that Mr. Sonnenberg had a call scheduled with an individual named Josh Cobian about the reserve funds.[16]

Mid-December 2018, Mr. Sonnenberg exchanged several emails with an ePay employee (Mr. Vickers was also included on the chain) about a proposed release agreement for the reserve funds.[17] In a December 19, 2018 response, Mr. Sonnenberg wrote that he was "concerned" about the proposal, he had not "processed anything through the [Bank merchant] account in almost 2 years and it's been a long time since [he] had a chargeback"; he questioned how ePay could "dispute the fact that [he is] entitled to the recovery of any money under any theory of law"; and he believed the reserve funds were his "money that [ePay] are holding" so he "expect[ed] the full amount."[18] On January 3, 2019, the ePay employee responded to explain the basis for the proposal, which was "suggested by Mr. Cobian following his phone meeting with [Mr.

---

[13] MSJ 6–7 ¶ 18; Opp'n 5 ¶ 18; December, 6, 2018 Email ("Ex. 4"), ECF No. 63-1 at 49–50, filed April 15, 2026.
[14] Ex. 4 at 50.
[15] MSJ 7 ¶ 19; Opp'n 5 ¶ 19; December, 10, 2018, Email Chain ("Ex. 5"), ECF No. 63-1 at 51–53, filed April 15, 2026.
[16] Ex. 5 at 52.
[17] MSJ 7 ¶ 20; Opp'n 6 ¶ 20; December, 19, 2018 Email Chain ("Ex. 6"), ECF No. 63-1 at 54–59, filed April 15, 2026.
[18] Ex. 6 at 58.

Sonnenberg]."[19] That day, Mr. Sonnenberg wrote that he was "not interested in anything other than getting all of the reserves released. The only point of negotiation is in the time frame for the release."[20] The final email in this thread came on February 6, 2019, where Mr. Sonnenberg wrote that he made a proposal to Mr. Cobian who "stated that [his] proposal was denied by ePay with no further explanation," and Mr. Sonnenberg requested a "dialog with those that can make a decision so that [they] can make some progress on this."[21]

Around that same timeframe, Mr. Sonnenberg contacted Expitrans. In December 2018, Mr. Sonnenberg emailed an Expitrans employee "regarding the reserve[] [funds] for my merchant account that I have with [ePay] and [the Bank] . . . . I'd like to get the remaining amount released."[22] In response, the employee wrote that she forwarded the request to the ePay support team because "it will need to ultimately come from ePay."[23]

Mr. Sonnenberg also exchanged emails with a representative at the Bank regarding the reserve funds.[24] One email Mr. Sonnenberg sent on January 2, 2019, communicated that ePay had "offered [him] a very poor settlement . . . . and [he] will be forced to reach out to a law firm in Mauritius to seek the reserve[] [funds]."[25] And on January 7, 2019, Mr. Sonnenberg wrote that "[t]he only thing I've heard back from [Mr. Vickers] or anyone at ePay was the proposal of paying me a settlement . . . which I rejected."[26]

---

[19] *Id.* at 57.
[20] *Id.* at 57.
[21] *Id.* at 56.
[22] MSJ 7 ¶ 21; Opp'n 6 ¶ 21; December 6-7, 2018, Email Chain ("Ex. 7"), ECF No. 63-1 at 60–61, filed April 15, 2026.
[23] Ex. 7 at 61.
[24] MSJ 7 ¶ 22; Opp'n 6 ¶ 22; December 6, 2018–January 7, 2019, Emails ("Ex. 8"), ECF No. 63-1 at 62–67, filed April 15, 2026.
[25] Ex. 8 at 65.
[26] *Id.* at 63.

On June 14, 2023, eLearning filed its complaint against Defendants in Utah state court, asserting a claim of unjust enrichment.[27] Defendants removed to this court and invoked the court's diversity jurisdiction under 28 U.S.C. § 1332.[28]

## STANDARD

A moving party "is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[29] A factual dispute is genuine where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[30] To determine whether a genuine dispute of material facts exists, courts "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[31] But even though a "nonmoving party is entitled to all reasonable inferences from the record" on a motion for summary judgment, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue."[32]

---

[27] *See* Am. Notice of Removal 1 ¶ 1, ECF No. 13, filed July 27, 2023.
[28] *See id.* at 3–4.
[29] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019); FED R. CIV. P. 56(a).
[30] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[31] *Id.*
[32] *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013).

## DISCUSSION

### I. Statute of Limitations

Defendants assert that the applicable statute of limitations bars eLearning's claim of unjust enrichment.[33] "A federal court sitting in diversity applies the substantive law of the state where it is located, including the state's statute of limitations."[34] Because this matter is before the court on diversity jurisdiction,[35] Utah law governs this dispute and the court applies the relevant statute of limitations provided by Utah law. Under Utah law, Utah's four-year, catch-all statute of limitations applies to a claim of unjust enrichment and therefore governs the timeliness of eLearning's claim.[36]

Utah courts follow a "general rule" that a statute of limitations period "begins to run upon the happening of the last event necessary to complete the cause of action."[37] "Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred."[38] Defendants assert that, because eLearning did not have a chargeback on the Bank merchant account after 2017 and the reserve funds were to be released "after 180 days absent valid chargebacks," the statute of limitations began to run on June 29, 2018.[39] This alleged statute of limitations period would place the four year expiration date to file an unjust enrichment claim at June 29, 2022—approximately a year prior to eLearning filing this suit.[40]

---

[33] MSJ 11.
[34] *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) (citing *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)).
[35] *See* Am. Notice of Removal 3–4.
[36] *See* UTAH CODE § 78B-2-307(4); *Pero v. Knowlden*, 2014 UT App 220, ¶ 16, 336 P.3d 55.
[37] *Huner v. Finau*, 2024 UT App 17, ¶ 16, 545 P.3d 294 (citing *Russell Packard Dev., Inc., v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741)).
[38] *Russell Packard*, 2005 UT 14, ¶ 20.
[39] MSJ 12.
[40] *See* Am. Notice of Removal 1 ¶ 1.

eLearning does not dispute that 180 days from its latest chargeback constituted the last event necessary to complete the cause of action, but it instead argues the statute of limitations period did not "commence[] on June 29, 2018" because "the statute of limitations for [its] unjust enrichment claim was tolled" by either: (A) the equitable discovery rule, or (B) equitable estoppel. The court addresses both of these arguments in turn.

**A. Discovery Rule**

Utah courts recognize the "discovery rule" as a "narrow" exception to the general rule of when a statute of limitations begins to run.[41] This rule allows a statute of limitations to "be tolled 'until the discovery of facts forming the basis for the cause of action.'"[42] Relevant here, Utah courts have applied the discovery rule to claims for unjust enrichment, tolling "the time to file an action . . . until a plaintiff 'knows or should know of the alleged breach or repudiation.'"[43]

eLearning argues that the discovery rule tolls its claim for unjust enrichment because it did not know or should not have known of its claim "until the time that [it] knew that ePay would not release any of the reserve funds."[44] In support, eLearning points to emails exchanged between Mr. Sonnenberg, ePay, and Mr. Vickers from December 2018 "discussing a potential payout agreement."[45] And it singles out the February 6, 2019, email from Mr. Sonnenberg as making it "clear" eLearning was unaware "of an alleged breach/repudiation by ePay as of June 29, 2018," because "the parties were seemingly in the process of working together to issue some

---

[41] *Russell Packard Development, Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741.
[42] *Id.* (quoting *Hill v. Allred*, 2001 UT 16, ¶ 15, 28 P.3d 1271).
[43] *Pero v. Knowlden*, 2014 UT App 220, ¶ 16, 336 P.3d 55 (quoting *Snow v. Rudd*, 2000 UT 20, ¶ 11, 998 P.2d 262).
[44] Opp'n 11.
[45] Opp'n 11; *see also* Ex. 4–6.

sort of refund to Plaintiff *even as late as of February 6, 2019*."[46] But there is a glaring issue with eLearning's argument that precludes any meaningful application of the discovery rule.

Even assuming without deciding that eLearning did not know or should have known of its unjust enrichment claim during its communications with ePay, Mr. Vickers, the Bank, and others between 2018 and early 2019,[47] applying the discovery rule to toll eLearning's unjust enrichment claim to February 6, 2019, would set the four-year statute of limitations period as expiring on February 6, 2023.[48] eLearning did not file its unjust enrichment claim until June 14, 2023,[49] which is still untimely. And there is no basis in evidence to make a reasonable inference that eLearning did not know (or at least should have known) of its claim by February 6, 2019, because eLearning has proffered no evidentiary support to show a lack of knowledge beyond that date.[50] In fact, eLearning does not offer the court—let alone argue from the evidence for—a date later than February 6, 2019, to show when it knew or should have known of an "alleged breach or repudiation" to support its unjust enrichment claim.[51] Because eLearning's claim is untimely whether or not the discovery rule tolls the statute of limitation to the latest date eLearning alleges it should have known of its claim (February 6, 2019), the court concludes that the discovery rule does not save that claim from the statute of limitations bar.

---

[46] Opp'n 11 (emphasis added).

[47] To be sure, Defendants argue that eLearning knew of its claim throughout this process. They point to an email from Mr. Sonnenberg referencing his right to the reserve funds "under any theory of law," as well as an email to a representative at the Bank asserting Mr. Sonnenberg would seek legal assistance to obtain the reserve funds. MSJ 13; Ex. 6, 8. And they assert that eLearning "conflates lack of awareness . . . with attempts at informal resolution." Defendants' Reply in Support of Mot. For Summ. J. ("Reply") 13, ECF No. 66, filed May 27, 2026. But the court need not decide whether the discovery rule should apply in the first place because, for the reasons stated *infra*, applying the discovery rule does not toll eLearning's untimely unjust enrichment claim into a timely one.

[48] *See* UTAH CODE § 78B-2-307(4).

[49] *See* Am. Notice of Removal 1 ¶ 1.

[50] *See* Opp'n 10–12.

[51] *See id.*

**B. Equitable Estoppel**

eLearning also invokes equitable estoppel as an alternative legal theory that saves its unjust enrichment claim.[52] eLearning's argument, in its entirety, contends that eLearning "reasonably relied on Defendant Vickers and other responsible parties' representation that a reimbursement of the reserve funds (or some portions thereof) was imminent" and that "the parties were willing to negotiate a reasonable settlement or resolution of the case."[53] In response, Defendants contend that any evidence of negotiations are, at most, a "mere promise to pay" that cannot support equitable estoppel.[54] Defendants also argue that "no reasonable inference exists that [eLearning] relied" on the negotiation communications and that the correspondence itself is not of the kind "on which [eLearning] could have reasonably relied."[55]

Equitable estoppel differs from the discovery rule in that equitable estoppel is "invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing suit."[56] The doctrine is used when a defendant "has unjustly 'lull[ed] an adversary into a false sense of security thereby subjecting his claim to the bar of limitations' and is then 'heard to plead that very delay as a defense.'"[57] Put another way, it requires a party to show that is "has been induced to refrain from using such means or taking

[52] *Id.* at 12.
[53] *Id.*
[54] Reply 14–15 (quoting *Fitzgerald v. Spearhead Invs., LLC*, 2021 UT 34, ¶ 24, 493 P.3d 664).
[55] *Id.* at 14–15.
[56] *Fitzgerald*, 2021 UT 34, ¶ 16 (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (brackets omitted)).
[57] *Id.* ¶ 17 (quoting *Rice v. Granite Sch. Dist.*, 456 P.2d 159, 163 (Utah 1969)).

such action as lay in his power, by which he might have retrieved his position and saved himself from loss."[58] By its very nature, "[e]stoppel is usually reserved for the most extreme cases."[59]

Under Utah law, equitable estoppel may toll a statute of limitations if a plaintiff establishes three elements: (1) "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; (2) "reasonable action or inaction" on the basis of that "statement, admission, act, or failure to act"; and (3) injury.[60] The party asserting equitable estoppel bears the burden of proving its elements.[61]

Here, eLearning has not shown a genuine dispute of material fact concerning equitable estoppel's first two required elements.[62]

First, eLearning has not established that Defendants made a statement or act inconsistent with a claim later asserted. In *Fitzgerald v. Spearhead Investments, LLC*,[63] the Utah Supreme Court held that a defendant's "mere promise to pay, without more, even though relied upon by the plaintiff, is not 'inconsistent with a claim later asserted.'"[64] Holding otherwise, the court reasoned, "would obviate the purpose of the statute of limitations defense," which prevents, among other things, "stale claims that are difficult to prosecute."[65] The court juxtaposed this holding with a previous case where it found something more than a mere promise.[66] In that case,

[58] *Id.* ¶ 19 (quoting *Rice*, 456 P.2d at 162).
[59] *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 28, 525 P.3d 100.
[60] *Id.* ¶ 18 (quoting *Jeppesen v. Bank of Utah*, 2018 UT App 234, ¶ 33, 438 P.3d 81).
[61] *See R.O.A. Gen. Inc.*, 2022 UT App 141, ¶ 30; *Iota, LLC v. Davco Management Co.*, 2012 UT App 218, ¶ 30, 384 P.3d 681, as corrected (Apr. 9, 2024); *accord Balmer Fund, Inc. v. City of Harper*, 294 F.Supp.3d 1136, 1148 (D. Kan. 2018).
[62] *Cf. Fitzgerald*, 2021 UT 34, ¶ 34 (remanding for the district court to consider "if a material issue of fact exists as to whether [defendant's] promises constituted more than a mere promise to pay").
[63] 2021 UT 34, 493 P.3d 664.
[64] *Id.* ¶ 27.
[65] *Id.* ¶¶ 26–27.
[66] *Id.* ¶ 31 (citing *Rice v. Granite Sch. Dist.*, 456 P.2d 159 (Utah 1969).

an insurer, on several occasions over the course of a year, " accept[ed] responsibility, promis[ed] payment, and t[old] [a debtor] not to worry and that everything was in order," but then once the statute of limitations period expired, the insurer told the debtor its claim was denied.[67] These actions "lulled [the debtor] into a false sense of security."[68]

eLearning has not shown a genuine dispute of material fact to support an inference that Defendants made anything more than a promise to pay. At most, the communications between Mr. Sonnenberg, ePay, and Mr. Vickers show that ePay was, at one point, willing to pay some amount of the reserve funds.[69] But rather than showing a *promise* to pay, the communications show that Mr. Sonnenberg had rejected a proposal from ePay (Mr. Sonnenberg told ePay he was "not interested" in the proposal),[70] and that ePay had similarly rejected a later proposal from Mr. Sonnenberg (he recognized that his "proposal was denied by ePay").[71] And in the midst of these communications, Mr. Sonnenberg's emails to the Bank representative suggests that he knew he would not receive the payment he desired—for example, he told the Bank representative after ePay's initial proposal that he would need to reach out to a "law firm" to recover the reserve funds.[72] So even if the court could construe the initial proposal as some "promise to pay," eLearning presents no evidence that supports a reasonable inference beyond that. Rather than being "lulled . . . into a false sense of security,"[73] the evidence suggests that eLearning was aware it may not receive the reserve funds to which it was purportedly "entitled."[74]

---

[67] *Id.* (citing *Rice*, 456 P.2d at 161, 163).
[68] *Id.* (brackets omitted).
[69] *See* Ex. 6.
[70] *Id.* at 57.
[71] *Id.* at 56.
[72] *See* Ex. 8 at 65.
[73] *Fitzgerald*, 2021 UT 34, ¶ 31 (brackets omitted).
[74] Ex. 6 at 58.

Second, eLearning has not established that its inaction was in reliance of a statement or act from Defendants or that any such reliance was reasonable. Utah courts have determined that equitable estoppel's second element requires an "evaluation of the reasonableness of a plaintiff's conduct in light of the defendant's . . . conduct."[75] So "a plaintiff must show not only that she was induced into 'action or inaction' by the defendant's 'statement, admission, act, or failure to act,' but also that that her action or inaction was 'reasonable.'"[76] As with the first element, in the face of a "mere promise to pay," a party's reliance on that promise at face value "would be insufficient" under a reasonableness inquiry.[77]

In *Daniels v. Deutsche National Trust & Ocwen Loan Servicing LLC*,[78] the Utah Court of Appeals declined to apply equitable estoppel between two once-negotiating parties for want of any reasonable reliance.[79] There, a group of homeowners made several attempts to negotiate a mortgage modification with a mortgage lending company to avoid foreclosure.[80] These modification requests occurred within the statute of limitations period and communication between the two parties lasted years into that period.[81] When the statute of limitations period ran, the homeowners invoked the statute of limitations and the mortgage company invoked equitable estoppel, arguing that they reasonably relied on the mortgage modification negotiations by not pursuing foreclosure.[82] The court reasoned that "[o]ne would expect that, as a sophisticated party, [the mortgage company] would have reasonably concluded that Homeowners had

[75] *Id.* ¶ 16 (quoting *Russell Packard*, 2005 UT 14, ¶ 26).
[76] *Id.* ¶ 28 (quoting *Jeppesen*, 2018 UT App 234, ¶ 33).
[77] *Id.*
[78] 2021 UT App 105, 500 P.3d 891.
[79] *Id.* ¶¶ 44–45.
[80] *Id.* ¶¶ 7–13.
[81] *Id.* ¶ 44.
[82] *Id.* ¶¶ 14, 19, 42.

abandoned their efforts to work out a modification after months of not hearing from them. But even after it was apparent that a mortgage modification was not likely, [the mortgage company] did not act to foreclose . . . until after the limitation period had expired."[83] The court "fail[ed] to see how [that] inaction can be considered reasonable in these circumstances."[84] So too here.

eLearning has not shown how it was induced into any *reasonable reliance* to not bring suit based on its communications with ePay and Mr. Vickers. To resist summary judgment, eLearning points the court to Mr. Sonnenberg's email communications with Mr. Vickers and ePay discussing his desire for the reserve funds, proposed agreements, and Mr. Sonnenberg's later "request[] for further dialogue" on February 6, 2019.[85] But even accepting eLearning's framing of these as containing "representations" of an "imminent" payout of "some" reserve funds (or at least a "willing[ness] to negotiate"),[86] eLearning shows scant evidence supporting an inference that it did, in fact, rely on those statements. The communications show that Mr. Sonnenberg knew both proposals were rejected (by himself and ePay, respectively), he had contemplated legal action to recover the reserve funds, and he made an attempt to re-initiate contact to make "some progress" on eLearning's desired outcome.[87] Nothing there suggests eLearning was relying on an arrangement between it and ePay or Mr. Vickers. And even if the court could infer reliance solely from eLearning's inaction in filing suit, eLearning does not explain why, as a sophisticated party, its inaction could be considered *reasonable* where it was offered a single proposal that it rejected, it had no communication with ePay or Mr. Vickers

---

[83] *Id.* ¶¶ 44.
[84] *Id.* ¶ 44.
[85] Opp'n 11; *see also* Ex. 4–6.
[86] Opp'n 12.
[87] *See* Ex. 6, 8.

since February 2019, and it waited to file suit over four years after the last purported negotiations occurred. For these reasons, eLearning has failed to show that there is a genuine issue of material fact that its inaction was in reasonable reliance on Defendants' actions.

eLearning's unjust enrichment claim is therefore time barred by the applicable statute of limitations.[88]

**ORDER**

Accordingly, Defendants' motion for summary judgment is GRANTED.[89]

Signed August 25, 2026.

BY THE COURT

David Barlow
United States District Judge

[88] Defendants also argue that eLearning does not have evidence to support the merits of its claim, a contractual agreement precludes unjust enrichment, and a forum selection clause requires dismissal. MSJ 2–3. Because the court resolves the claim on the statute of limitations basis, it does not reach these remaining arguments. *See, e.g.*, *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1076 n.12 (10th Cir. 2007) (deciding a case on one of the grounds presented and declining to reach additional arguments).

[89] ECF No. 63.